UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------

IRENE SEARIGHT,                                   X    CIVIL ACTION NO.  02-604 (SJF)

Plaintiff,

MEMORANDUM OF LAW

-against-

DOHERTY ENTERPRISES, INC., d/b/a
APPLE FOOD SERVICE OF NEW YORK,
LLC, a/d/b/a APPLEBEE'S RIVERHEAD,
and JONATHAN BERDINKA,

Defendants.

----------------------------------------------------------

X

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS DOHERTY ENTERPRISES, INC., d/b/a APPLE FOOD SERVICE OF NEW YORK, LLC, a/d/b/a APPLEBEE'S RIVERHEAD, and JONATHAN BERDINKA

### PRELIMINARY STATEMENT

This memorandum of law is submitted in support of defendants', Doherty Enterprises,

Inc., d/b/a Apple Food Service of New York, LLC, a/d/b/a Applebee's Riverhead, and Jonathan

Berdinka (hereafter "Doherty", "Berdinka" or collectively "Defendants"), motion for an order (1)

pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, granting summary judgment in favor

of Defendants dismissing the Complaint because there are no facts sufficient to require the trial of

any issue of fact and that judgment in favor of Defendants is warranted as a matter of law; and (2)

for such relief as this court may consider just and fair.

## FACTS

Plaintiff alleges that on January 19, 2001, defendant Berdinka subjected plaintiff to unwelcome sexual contact, which resulted in physical injury, that allegedly occurred in the restaurant on a Friday night with a table full of patrons ten feet away and 13 to 16 servers walking around. *See* Affidavit of Juan C. Fernandez, dated January 12, 2005 and submitted herewith ("Fernandez Aff."), ¶ 4, Exhibits A, B; ¶ 9, Exhibit G, pages 140, 152. She also alleges that she reported said contact to her manager, Tara Hennessey ("Hennessey"), on January 20, 2001 but no action was taken until February 16, 2001. *Id.* at ¶ 4, Exhibits A, B. Defendants maintain that their first knowledge of the incident did not come until February of 2001. Following her report to Hennessey, plaintiff alleges that she was subjected to retaliatory conduct in the form of written and verbal criticism for improper performance and threatened with termination. *Id.* Hennessey was unaware that plaintiff alleged that Berdinka made physical contact with her because plaintiff had not indicated that there was any physical contact. *Id.* at ¶ 11, Exhibit I, pages 84-85. Additionally, the Director of Human Resources, Wendy Mingst ("Mingst"), was unaware that the incident plaintiff claimed occurred on January 19, 2001 involved any physical contact. *Id.* at ¶ 10, Exhibit H, pages 95-96.

As a result of the alleged January 19th incident and the alleged retaliatory conduct, plaintiff filed a charge of discrimination, on or about June 21, 2001, with the United States Equal Employment Opportunity Commission ("EEOC") charging discrimination and unfair employment practices against defendant Doherty. *Id.* at ¶ 5, Exhibit C. On November 2, 2001, the EEOC issued a Notice of Right to Sue and conclusion that it was unable to determine that a violation had occurred. *Id.* at ¶ 6, Exhibit D.

Additionally, plaintiff filed a claim under New York State *Workers' Compensation Law*. *Id.* at ¶ 7, Exhibit B. A hearing was conducted on October 9, 2001 and a second hearing was held on February 14, 2003. *Id.*, Exhibits B, E. Following the second hearing, plaintiff was determined to be "permanently partially disabled" and was awarded monetary compensation. *Id.* Exhibit E.

On or about January 28, 2002, plaintiff commenced the within action against Defendants to recover for injuries supposedly sustained as a result of defendant Berdinka's alleged assault and defendant Doherty's alleged subsequent retaliatory actions. Over counsel's objection plaintiff, thereafter, amended her original complaint, seeking additional relief under New York state law. *Id.* at ¶ 2, Exhibits A, B.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P.* 56(c); *Lumhoo v. The Home Depot USA, Inc.*, 229 F. Supp. 2d 121, 130 (E.D.N.Y. 2002); *Jackanin v. Mount Sinai Hospital*, 2003 U.S. Dist. LEXIS 2475, 7 (S.D.N.Y. 2003); *see also Celotex v. Catrett*, 477 U.S. 317, 322-323, 106 S. Ct. 2548, 2552 (1986). Taking all evidence presented, the court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *Jackanin*, 2003 U.S. Dist. LEXIS 2475 at 7. The judge then determines that if a reasonable jury, after reviewing the evidence, could decide in favor of the nonmoving party, there is a genuine dispute regarding a material fact. *Lumhoo*, 229 F. Supp. 2d at 130; *Jackanin*, 2003 U.S. Dist. LEXIS 2475 at 7; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S. Ct. 2505, 2509-2510 (1986). The

nonmoving party must go beyond the pleadings and present actual facts to demonstrate that a genuine issue of fact exists. *Lumhoo*, 229 F. Supp. 2d at 130; *Celotex*, 477 U.S. at 324; *see also Miller v. Taco Bell Corp.*, 204 F. Supp 2d 456, 458 (E.D.N.Y. 2002) ("where an employer provides convincing evidence explaining its conduct, and the plaintiff's case rests on conclusory allegations of discrimination, the court may properly conclude that there is no genuine issue of material fact and grant summary judgment to the employer").

Here, as in *Lumhoo*, plaintiff cannot show that she suffered adverse employment action that was the product of discriminatory intent, there is no individual liability as to the individual defendant for the relief being sought, the plaintiff's claims for non-intentional activity are barred by the exclusivity of remedies in the state court proceeding, plaintiff's claims are barred to the extent they were known but not presented to the EEOC and/or the state Workers' Compensation Court, the statute of limitations precludes plaintiff's state law claims for assault and intentional infliction of emotional distress, and plaintiff's claim for punitive damages is barred within the context of plaintiff's state law claims; therefore, summary judgment is appropriate.

## ARGUMENT

## POINT I

### THE COURT MUST DISMISS THE CLAIMS AGAINST DEFENDANT BERDINKA BECAUSE THERE IS NO INDIVIDUAL LIABILITY UNDER NEW YORK STATE LAW

New York law holds that there is no individual liability under New York *Human Rights Law* (HRL), although there is some disagreement among the state courts regarding this issue. The New York Court of Appeals, in *Patrowich v. Chemical Bank*, held that an employee is not individually liable under HRL §296 "if he is not shown to have any ownership interest or any power to do more than carry out personnel decisions made by others." *Patrowich*, 63 N.Y.2d

541, 542, 483 N.Y.S.2d 659 (1984); *Hicks v. IBM*, 44 F. Supp. 2d 593, 599 (S.D.N.Y. 1999).

The Second Circuit, in *Tomka*, distinguished *Patrowich* and held that an individual employee

may be held liable under HRL §296 "even without an ownership interest or the authority to hire

and fire", if that individual actually participated in the discriminatory act. *Tomka v. Seiler Corp.,*

66 F.3d 1295, 1317 (2d Cir. 1995)[1]; *Hicks*, 44 F. Supp. 2d at 599. There has been no testimony

by plaintiff that Berdinka was her supervisor, or acted in a supervisory capacity. In fact,

Berdinka had no supervisory role. Fernandez Aff., ¶ 14, Exhibit L.

Pursuant to HRL §296(6), it is an unlawful discriminatory practice "for any person to aid,

abet, incite compel or coerce the doing of any of the acts forbidden under this article or attempt

to do so." *Tomka*, 66 F.3d at 1317; *N.Y. Exec. Law* §296(6). Based on this statutory language,

several courts have held that a defendant who actually participates in the conduct giving rise to a

discrimination claim may be held personally liable. *Id.* (finding that the allegation that each

individual defendant assaulted plaintiff, thereby creating a hostile working environment, was

sufficient to satisfy §296(6)); *see also Poulsen v. City of North Tonawanda, N.Y.*, 811 F. Supp.

884, 900 (W.D.N.Y. 1993); *Bridges v. Eastman Kodak Co.*, 800 F. Supp. 1172, 1180-1181

(S.D.N.Y. 1992).

Although New York courts have criticized the Second Circuit's decision in *Tomka*,

subsequent case law indicates that *Tomka* is the current law in New York. *Duviella v.*

*Counseling Service of the Eastern District of New York*, 2001 U.S. Dist. LEXIS 22538, 57

(E.D.N.Y. 2001) (holding that *Tomka* is the current law in the Second Circuit and therefore

binding on lower federal courts); *Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004)[2];

---

[1] It is important to note that *Patrowich* only addressed individual liability under HRL §296 and did not address the applicability of §296(6).

[2] Noting that "Though state courts are not in unanimous agreement with this aspect of our decision in *Tomka*, the majority of courts that have considered the issue have affirmed the existence of a cause of action against individual

*Curran v. All-Waste Sys.*, 2000 U.S. App. LEXIS 11025, 7-8 (2d Cir., 2000) (vacating the district court's grant of summary judgment with respect to plaintiff's claims against the individual defendants under the NYSHRL insofar as they are based on § 296(6))[3]; *Heinemann v. Howe & Rusling*, 260 F. Supp. 2d 592, 599 (W.D.N.Y. 2003) (holding that *Tomka* is the law in the Second Circuit and "simply because the state courts have not been in complete agreement on whether *Tomka* was correctly decided does not make the issue of individual liability novel or complex).

Despite the disagreement over the *Tomka* holding regarding individuals being held individually liable under HRL §296(6), New York courts have agreed that individuals may not be held liable for aiding and abetting their **own** violations of the HRL.  *Perks v. Town of Huntington*, 96 F. Supp. 2d 222, 228 (E.D.N.Y. 2000) (emphasis added); *see also*, *Salvatore v. KLM Dutch Airlines*, 1999 U.S. Dist. LEXIS 15551 (S.D.N.Y. 1999) (denying motion to dismiss claim under §296(6) where individual defendant was the sole employee alleged to have engaged in discriminatory conduct); *Hicks*, 44 F. Supp. 2d at 600 (dismissing an HRL §296(6) claim against a defendant based on the theory that the primary actor cannot be an aider and abettor of his own actions).  The *Perks* court noted that the Second Circuit's decision in *Tomka* that

---

defendants under the aid-or-abet provision of the NYSHRL. *See*, e.g., *D'Amico v. Commodities Exch., Inc.*, 235 A.D.2d 313, 652 N.Y.S.2d 294 (N.Y. App. Div. 1997) (calling the availability of this cause of action 'settled precedent in [the First] Department'); *Murphy v. ERA United Co.*, 251 A.D.2d 469, 674 N.Y.S.2d 415 (N.Y. App. Div. 1998) (clarifying, after an earlier decision cast doubt on plaintiffs' ability to sue co-workers under the aid-and-abet provision, that co-employees may be held liable for aiding and abetting the discrimination of an employer so long as the employer itself is susceptible to suit). *See also Heinemann v. Howe & Rusling*, 260 F. Supp. 2d 592, 596-97 (W.D.N.Y. 2003) (discussing the status of *Tomka*); *Petrosky v. New York State Dep't of Motor Vehicles*, 72 F. Supp. 2d 39, 65 (N.D.N.Y. 1999) (noting that the 'vast majority of federal courts to have considered the question have followed *Tomka*')."

[3] Noting that the Second Circuit held, in *Tomka* that *Patrowich* did not apply to claims under §296(6), "*see id.* at 1317, which makes it an unlawful act to 'aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this article,' *N.Y. Exec. Law* §296(6).  Nothing that has occurred since *Tomka* in the New York courts by way of interpretation of §296(6) suffices to justify a reconsideration of that holding. *See Murphy v. ERA United Realty*, 251 A.D.2d 469, 674 N.Y.S.2d 415, 417 (2d Dep't 1998) (approving of *Tomka* and distinguishing *Trovato v. Air Express Int'l.*, 238 A.D.2d 333, 655 N.Y.S.2d 656 (2d Dep't 1997) (questioning *Tomka*)); *Steadman v. Sinclair*, 223 A.D.2d 392, 636 N.Y.S.2d 325, 326 (1st Dep't 1996) (approving of *Tomka*)."

plaintiff's allegation of assault by each of the individual defendants satisfied the aiding and abetting statue of HRL §296(6) seems to diverge from the line of reasoning New York courts have been following. *Perks*, 96 F. Supp. 2d at 228. However, the Second Circuit's rationale was interpreted as being that the individual defendants were aiding and abetting **each other's** violations, which would allow the reading that an individual defendant cannot be an aider and abettor to his own actions. *Id.* (emphasis added). In *Tomka*, the district court held that "the three individual defendants could not be held liable in their individual capacities under either Title VII or HRL." *Id.* at 1304. On appeal, the Second Circuit affirmed the district court's decision. *Id.* at 1313.

In the instant case, defendant Berdinka was the sole employee alleged to have engaged in any sexual harassment. Berdinka was not, however, a party to the discriminatory actions plaintiff alleges were subsequently taken against her by defendant Doherty. Plaintiff's contention is that Berdinka's alleged contact was the exclusive cause of her physical injuries and emotional distress, and not as a result of any employment discrimination. Defendant Berdinka also did not have any "ownership interest or any power to … carry out personnel decisions" and was not plaintiff's supervisor. Fernandez Aff., ¶ 14, Exhibit L; *Patrowich*, 63 N.Y.2d at 542, 483 N.Y.S.2d at 659. Therefore, Berdinka cannot be held individually liable under HRL §296.

Additionally, as case law in this state has established, Berdinka cannot be held individually liable under HRL §296(6) because he could not be an aider or abettor to his own actions. *Perks*, 96 F. Supp. 2d at 228; *see also*, *Salvatore*, 1999 U.S. Dist. LEXIS 15551; *Hicks*, 44 F. Supp. 2d at 600

Based on the foregoing, giving plaintiff every benefit of the doubt that the incident actually occurred, defendant Berdinka cannot be held individually liable under HRL §296 and all claims against him must be dismissed.

## POINT II

### THE COURT MUST DISMISS THE CLAIM AGAINST DEFENDANT BERDINKA BECAUSE THERE IS NO INDIVIDUAL LIABILITY UNDER FEDERAL LAW

Under 42 U.S.C. §2000e *et seq.* ("Title VII"), employers are prohibited from "discriminating against any individual with respect to [her] compensation, terms, conditions, or privileges of employment" based on sex. *Mormol v. Costco Wholesale Corp.*, 364 F.3d 54, 57 (2d Cir. 2004) (quoting directly from 42 U.S.C. §2000e-2(a)(1)).

It is well settled in the Second Circuit that no individual liability exists under Title VII. *See Mormol*, 364 F.3d at 56 (holding dismissal of Title VII claim against individual defendant was proper); *Gregory v. Daly*, 243 F.3d 687, 689 n.1 (2d Cir. 2001) (stating that an individual supervisor is not a proper defendant under Title VII). New York state courts have followed this trend, finding that Title VII does not create individual liability for violations. *See Linder v. City of New York*, 263 F. Supp. 2d 585, 594 (E.D.N.Y. 2003) (holding that only an employer may be held liable under Title VII and that the employer is vicariously liable for the violations of its employees); *Tekula v. Bayport-Blue Point School District*, 295 F. Supp. 2d 224, 229 (E.D.N.Y. 2003) (finding that "a Title VII claim against an individual employee is treated as one for vicarious liability against the employer").

In *Tomka*, a female employee who had been sexually assaulted by three coworkers complained to her supervisor and had to be out of work on medical leave for several months. *Tomka*, 66 F.3d at 1302. An internal investigation was conducted and the security director

concluded that no assault had occurred, although he did find that one of the men had acted "inappropriately" by sleeping with Tomka while she was inebriated and disciplinary actions were taken against two of the three alleged assailants.  *Id.*

After she had been out of work for two months, Tomka was informed that her extended leave with benefits was ending and she was required to report for her next assignment.  *Id.* at 1303.  She was subsequently terminated and brought suit against Seiler, her employer, and her three assailants.  *Id.*  The district court granted summary judgment in favor of the defendants on all of the claims other than intentional infliction of emotional distress and assault against the three individual defendants.  *Id.*  The court also held that "the three individual defendants could not be held liable in their individual capacities under either Title VII or HRL."  *Id.* at 1304.  On appeal, the Second Circuit affirmed the district court's decision.  *Id.* at 1313.

In New York, a plaintiff may not bring suit to hold an individual employee personally liable under Title VII.  Therefore, even giving plaintiff the benefit of the doubt that the incident actually occurred, the Title VII claim against defendant Berdinka must be dismissed.

## POINT III

### THE COURT MUST DISMISS THE STATE LAW CLAIMS AGAINST DEFENDANTS BECAUSE THE STATUTE OF LIMITATIONS HAS RUN

Plaintiff's allegations against defendant Berdinka constitute an assault.  New York Penal Law defines an act as assault in the third degree when the perpetrator "recklessly causes physical injury to another person."  *N.Y. CLS Penal* §120.00(2) (2004).  The law defines the mental state:

> A person acts recklessly…when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists.  The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.

*Id.*

Here, allegedly, defendant Berdinka recklessly straddled plaintiff's neck, causing her physical injuries.  It is alleged that defendant Berdinka disregarded the potential risk of his actions injuring plaintiff and stated that his intent was to joke around with her, not to cause her any injury.  Fernadez Aff., ¶ 12, Exhibit J, pages 45-47, 51, 70; ¶ 13, Exhibit K.  These actions, if plaintiff's version of events is accepted, clearly amount to an assault.

An assault action must be filed within one year of the injury causing incident.  *N.Y. CPLR* §215(3) (2004).  The incident at issue in this litigation occurred on January 19, 2001 and the Complaint was filed on January 28, 2002, one year and nine days after the statute of limitations had run.  The plaintiff's amended complaint, even if same relates back to the original filing date, is also time barred.  Therefore, the claims against Defendants pursuant to state law clearly are time barred.

## POINT IV

### THE COURT MUST DISMISS THE CLAIMS AGAINST DEFENDANTS BECAUSE PLAINTIFF'S EXCLUSIVE REMEDY IS NEW YORK STATE WORKERS' COMPENSATION LAW

Pursuant to Section 29(6) of New York State *Workers' Compensation Law*, "the right to compensation or benefits under this chapter, shall be the **exclusive remedy** to an employee…when such employee is injured…by the negligence or wrong of another in the same employ…."  *Workers' Compensation Law*, Article 2, Section 29(6) (emphasis added).  The phrase "in the same employ" is not satisfied merely because both parties have the same employer.  *Maines v. Cronomer Valley Fire Dept.*, 50 N.Y.2d 535, 543 (1980).  More specifically, the exclusivity provision will protect a defendant only if she was acting within the scope of her employment and did not engage in an intentional or willful tort.  *Id.*; *see Sigmon v.*

*Parker Chapin Flatau & Klimpl*, 901 F. Supp. 667, 682 (S.D.N.Y. 1995) ("New York's *Workers' Compensation Law* provides the exclusive remedy for unintentional employment related injuries").

In *Maines*, the court concluded that section 29 of the New York State *Workers' Compensation Law* did not protect the defendant's commitment of an intentional tort that was beyond the scope of his employment. *Id.* at 545. The plaintiff attended a regular monthly meeting of the defendant-fire department, during part of which he was inducted as a senior member. *Id.* at 540. Following the meeting, several other firefighters decided to "haze" the plaintiff by sneaking up on him from behind and restraining him with a bed sheet and belt. *Id.* at 541. They then threw the plaintiff into a dumpster, poured grease over him, hosed him with water for several minutes, and then rolled him out by turning over the dumpster. *Id.* The plaintiff had been severely cut while in the dumpster due to broken glass, which the pranksters did not discover until after he rolled out of the dumpster. *Id.* The Workers' Compensation Board ("WCB") received notice of the accident from the fire department chief and subsequently awarded benefits for the injuries, which the WCB found were sustained in the course of his fireman duties. *Id.* Thereafter, the plaintiff filed suit against the individual firefighters. *Id.*

The issue on appeal was whether the plaintiff's exclusive remedy was compensation and the court decided that it was not. *Id.* at 541. The court reasoned that the defendants had drastically departed from their duties and activities as volunteer firemen. *Id.* at 544. Additionally, the court rejected the defendants' suggestion that the plaintiff must allege that the defendants intended to cause the harmful consequences that resulted. *Id.* at 545-546. The court further opined that "…the complaint in an action against a coemployee (or fellow fireman) for an assault committed outside the scope of the coemployee's employment (or not in furtherance of

the duties of the fellow fireman) need only allege deliberate intent or conscious choice to do the act which results in the injury." *Id.* at 546 (citing *Masters v. Becker*, 22 A.D.2d 118 (1964)).

Likewise, in *Hanford*, the Court of Appeals of New York held that a plaintiff is not barred from bringing suit for an intentional tort. *Hanford v. Plaza Packaging Corp.*, 2 N.Y.3d 348, 349 (2004). Plaintiff and defendant were both employees of the same company. *Id.* The defendant's misconduct did not arise in furtherance of the employer's business, but rather arose from solely personal motives. *Id.* Plaintiff alleged that defendant hid a video camera in the locker room located on the employer's premises in a futile attempt to record her while she changed clothes. *Id.* at 349-350. Plaintiff charged the defendant with violating the New York *Human Rights Law*, discrimination, sexual harassment "as *prima facie* tort," and intentional infliction of emotional distress. *Id.* at 350. Additionally, plaintiff applied for and received workers' compensation benefits. *Id.*

In *Maas*, the Appellate Court held that plaintiff was barred from pursuing a negligence claim against her employer for failing to initiate and follow policies to prevent discriminatory conduct. *Maas v. Cornell Univ.*, 253 A.D.2d 1, 3 (1999). Plaintiff, a tenured professor, sued his employer claiming that the defendant was negligent for "failing to follow its own policies and procedures in resolving sexual harassment complaints against him…," for which plaintiff suffered injuries, plus defense costs, injury to reputation, mental stress, and loss of income. *Id.* at 2.

The *Maas* court found that the plaintiff was barred from suing his employer for the latter's unintentional conduct. *Id.* at 4. The plaintiff argued that because his injuries do not constitute a "disability," his claim falls outside the scope of the exclusivity provisions of the *Worker's Compensation Law*. *Id.* at 3-4. The Appellate Court disagreed and noted that a mental

injury can be deemed accidental.  *Id.* at 4.  Furthermore, the court also rejected plaintiff's argument that his claims were exempt from *Worker's Compensation Law* §2(7)[4] because plaintiff could not prove the defendant was negligent for not following through on the disciplinary procedures against him.  *Id.* at 6.

When conduct is not intentionally harmful, workers' compensation remains the exclusive remedy.  Case law has established that frivolous activities or horseplay "although involving intentional acts, are natural diversions between coemployees during lulls in work activities and injuries sustained during them are compensable [under provisions of the *Workers' Compensation Law*] as an incident of the work."  *Christey v. Gelyon*, 88 A.D.2d 769, 770 (1982).  Defendants may be denied protection under the *Workers' Compensation Law*, however, if the acts committed are found to be excessive or otherwise outside the scope of employment.  *Briger v. Toys R Us*, 236 A.D.2d 683 (3d Dep't 1997).  *See Maines*, 50 N.Y.2d at 543-545; *Christey*, 88 A.D.2d at 770.

Berdinka's alleged actions fall under the category of horseplay which was discussed by the Appellate Division in *Christey*, "natural diversions between coemployees during lulls in work activities," and are therefore covered under the *Workers' Compensation Law*.  88 A.D.2d at 770.  Giving plaintiff every benefit of the doubt that the incident actually occurred, the claim against defendant Berdinka must be dismissed since the injury alleged was covered exclusively by plaintiff's workers' compensation claim.

There is no evidence at all that the corporate defendants, Doherty, acted intentionally.  In fact, plaintiff was thankful that the corporate defendants had conducted an investigation into her

---

[4] *Workers' Compensation Law* §2(7) provides that the term 'injury' shall not include "an injury which is solely mental and is based on work related stress if such mental injury is a direct consequence of a lawful personnel decision involving a disciplinary action, work evaluation, job transfer, demotion, or termination taken in good faith by the employer."

allegation. Fernandez Aff., ¶ 9, Exhibit G, pages 176, 192. Plaintiff contends that she reported the alleged incident with Berdinka to Hennessey the next day and was not "taken seriously". *Id.* at pages 115, 117, 203. In addition to Hennessey, plaintiff asserts that she informed other managers of the alleged incident, namely Emil Trotta ("Trotta"), Joe Scarlata ("Scarlata"), and Marc Prince ("Prince"), was not taken seriously by any manager and was told to "let Tara handle it." *Id.* at pages 202-203. Plaintiff even expressed gratitude to Director of Human Resources Mingst for her handling of the situation. *Id.* at page 176. When questioned about this exchange, plaintiff testified that she was thanking Mingst for conducting an investigation into the alleged incident. *Id.*

Additionally, the alleged actions taken by the management staff did not rise to the level of retaliatory actions. Plaintiff was allegedly given a verbal warning for entering incomplete orders into the computer on January 25, 2001 by Scarlata. *Id.* at page 161. It is alleged that on the same night Scarlata issued a written warning that threatened her with termination for not participating in singing "Happy Birthday" to a customer. She was allegedly yelled at and threatened with termination by Hennessey several days later. *Id.* at pages 167-168. Hennessey then issued a written warning to plaintiff on February 11, 2001 because plaintiff had refused to bring glassware to the bar area, which was part of her side work. *Id.* at page 164. Plaintiff testified she never received copies of these reports but she kept detailed notes, which were never produced, despite demand, or said notes were possibly discarded. *Id.* at pages 153-156. These incidents, even giving plaintiff the benefit of the doubt that they actually occurred, do not rise to the level or intentional actions, which would give rise to an exception to the Doctrine of Exclusivity of Remedy in the workers' compensation action as it relates to Doherty.

Giving plaintiff every benefit of the doubt that all incidents actually occurred, plaintiff's exclusive remedy for her injuries is New York State *Workers' Compensation Law* and as such, her claims in this court must be dismissed.

## POINT V

**THE COURT MUST DISMISS THE EMOTIONAL DISTRESS AND HOSTILE WORK ENVIRONMENT CLAIMS AGAINST DEFENDANTS BECAUSE THEY SHOULD HAVE BEEN RAISED IN THE ADMINISTRATIVE AND WORKERS' COMPENSATION PROCEEDINGS**

A plaintiff cannot raise a Title VII discrimination claim without first exhausting all available administrative remedies. *O'Neal v. SUNY Health Science Center Brooklyn*, 2003 U.S. Dist. LEXIS 4404, 7 (E.D.N.Y. 2003). *See Butts v. City of New York Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993) (holding that a district court only has jurisdiction to hear Title VII claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which are "reasonably related" to that alleged in the EEOC charge); *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 82-83 (2d Cir. 2001) (citing *Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000)). Exhaustion of all administrative remedies is an "**essential element**" of Title VII's statutory scheme. (emphasis added) *O'Neal*, 2003 U.S. Dist. LEXIS 4404, 8; *Butts*, 990 F.2d at 1401. In accordance with that requirement, a plaintiff may raise in a district court complaint only those claims that were either "included in or are reasonably related to the allegations contained in her [administrative] charge." *O'Neal*, 2003 U.S. Dist. LEXIS 4404, 8; *Holtz*, 258 F.3d at 83 (quoting *Butts*, 990 F.2d at 1401).

The Second Circuit has recognized three types of situations where claims not alleged in an EEOC charge are suitably related to the allegations in the charge that it would be unfair to bar such claims in a civil action. *Butts*, 990 F.2d at 1402. The court has referred to these claims as

being "reasonably related" to the allegations in the EEOC charge. *Id.* While the three situations are motivated by notions of fairness to civil rights litigants, their "reasonableness" stems from separate rationales. *Id.* The first type of recognized claim is "essentially an allowance of loose pleading."[5] *Id.* The second is a claim "alleging retaliation by an employer against an employee for filing an EEOC charge." *Id.* The third type of claim is one where "plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Id.* at 1403. *See* also *O'Neal*, 2003 U.S. Dist. LEXIS 4404, 31 ("The Second Circuit…has long recognized an exception to the exhaustion requirement for claims alleging retaliation by an employer against an employee for filing an administrative charge.").

In that same vein, a claim for negligent infliction of emotional distress arising out of alleged workplace actions must be brought under *Workers' Compensation Law. Chrzanowski v. Lichtman*, 884 F. Supp. 751, 756 (W.D.N.Y. 1994); *see also Burlew v. American Mutual Ins. Co.*, 63 N.Y.2d 412 (1984) (holding that plaintiff's claim for negligent infliction of emotional distress was barred by New York *Workers' Compensation Law*).

Plaintiff's emotional distress claims are not properly brought before this court because she failed to raise these claims in the administrative charges previously filed with the EEOC and the Workers' Compensation Board. Plaintiff had the duty of raising her emotional distress claims in the EEOC proceeding and at the workers' compensation proceeding, however she elected not to pursue these claims. Additionally, plaintiff's claimed emotional distress was not so severe that she sought immediate treatment. Fernandez Aff., ¶ 15, Exhibit M, page 42. In

---

[5] "Recognizing that EEOC charges are frequently filled out by employees without benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination…we have allowed claims not raised in the charge to be brought in a civil action where the conduct complained of would fall within the 'scope of the EEOC investigation'…" In the present case, plaintiff was present with counsel when these charges were filed with the EEOC.

fact, she did not seek psychological treatment until over two years after the alleged incident occurred. *Id.*

Moreover, plaintiff's charges in the administrative proceedings revolved solely around the January 19, 2001 alleged actions of defendant Berdinka and defendant Doherty's alleged negligent handling of that incident. Plaintiff had never claimed that a hostile work environment was created by additional acts of harassment by Berdinka subsequent to the alleged January 19, 2001 assault. In fact, plaintiff's complaint alleges an incident of sexual harassment occurred on January 16, 2001, before the alleged incident at issue here. This prior incident, and any subsequent incidents, were never mentioned in plaintiff's EEOC complaint nor her workers' compensation claim, thereby giving no opportunity for resolution or a complete adjudication of all claims that could have been presented. Plaintiff also raises for the first time in this litigation a hostile work environment claim which was not part of her EEOC claim nor part of any claim for mental injuries in the workers' compensation action.

All available remedies which could have been raised in the administrative hearing and Workers' Compensation Court were not, therefore the claims of emotional distress and hostile work environment are barred from being raised herein and must be dismissed.

### POINT VI

### THE COURT MUST DISMISS THE INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM AGAINST THE CORPORATE DEFENDANTS BECAUSE PLAINTIFF HAS FAILED TO MEET HER BURDEN

Plaintiff's claim for intentional infliction of emotional distress is time barred. Pursuant to New York CPLR, the statute of limitations is one year on a claim for intentional infliction of emotional distress. *NY CPLR* §215(3); *Guveiyian v. Keefe*, 1998 U.S. Dist LEXIS 6572, 5 (E.D.N.Y. 1998); *Tekula*, 295 F. Supp. 2d at 234; *Kwarren v. American Airlines*, 303 A.D.2d

722 (2003).  The actions alleged by plaintiff occurred on January 19, 2001 and this action was

commenced on January 28, 2002, one year and nine days later.  Therefore, this claim is time

barred.

Moreover, in order to prove a case of intentional infliction of emotional distress, a

plaintiff must establish four elements:

> (1) extreme and outrageous conduct on the part of the defendants,
> (2) intent on the part of the defendant to cause, or disregard of a
> substantial probability of causing, severe emotional distress, (3) a
> causal connection between defendants' conduct and the injury
> suffered, and (4) severe emotional distress suffered by plaintiff.

*Carter v. Cornell University*, 976 F. Supp. 224, 233 (S.D.N.Y. 1997); *see Howell v. New York*

*Post Co.*, 81 N.Y.2d 115, 121 (1993).  The requirements of this standard are very strict, and New

York courts have found liability only where the conduct has been "so outrageous in character,

and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as

atrocious, and utterly intolerable in a civilized community."  *Magee v. Paul Revere Life Ins. Co.*,

954 F.Supp. 582, 587 (E.D.N.Y. 1997); *Lydeatte v. Bronx Overall Economic Dev. Corp.*, 2001

U.S. Dist. LEXIS 1670, 3 (S.D.N.Y. 2001).  Because New York courts have been reluctant to

allow such claims in employment discrimination cases, it is particularly difficult for a plaintiff to

withstand a motion to dismiss a claim for intentional infliction of emotional distress in the

employment law context. *Lydeatte*, 2001 U.S. Dist. LEXIS at 4.

Giving plaintiff the benefit of the doubt that the incidents actually occurred, plaintiff

cannot meet the burden set forth above.  Although the first threshold element might be met as to

the individual defendant, the four elements are not met against the corporate defendants.  There

was no intent demonstrated in any testimony by plaintiff that the corporate defendants

intentionally caused severe emotional distress.  There has also been no causal connection

18

established between corporate defendants Doherty's alleged actions and any injury suffered by plaintiff.

Finally, plaintiff has failed to provide evidence that she has suffered severe emotional distress. In order to prevail on an intentional infliction of emotional distress claim, a plaintiff must allege facts which indicate that the defendant, "by extreme and outrageous conduct, intentionally or recklessly caused severe emotional distress."  Magee 954 F. Supp. at 587; *Lydeatte*, 2001 U.S. Dist. LEXIS at 5-6.

> The conduct alleged must be such that it can be fairly characterized as egregious, utterly despicable, heartless or flagrant.  Acts which merely constitute harassment, disrespectful or disparate treatment, a hostile environment, humiliating criticism, intimidation, insults or other indignities fail to sustain a claim of infliction of emotional distress because the conduct alleged is not sufficiently outrageous.

*Lydeatte*, 2001 U.S. Dist. LEXIS at 6.  This standard has not been met.  Under *Lydeatte*, "[a]cts which merely constitute harassment, disrespectful or disparate treatment, a hostile environment, humiliating criticism, intimidation, insults or other indignities fail to sustain a claim of infliction of emotional distress because the conduct alleged is not sufficiently outrageous."  *Id.*  Giving plaintiff every benefit of the doubt that the actions occurred as she alleges, plaintiff has failed to established that the acts complained of rise to anything close to the outrageous conduct required.  Adding to the impression that the Defendants' behavior was so outrageous as to cause emotional distress is the fact that plaintiff did not seek psychological treatment until two and a half years after the incident allegedly occurred.  Fernandez Aff, ¶ 15, Exhibit M, page 42.

As a result of the foregoing, the intentional infliction of emotional distress claim must be dismissed.

**POINT VII**

**THE COURT MUST DISMISS THE CLAIMS AGAINST DEFENDANTS BECAUSE THERE WAS NO ADVERSE EMPLOYMENT ACTION TAKEN**

Title VII creates employer liability when said employer has discriminated against its employees "based on race or gender, or for retaliating against an employee for having challenged such discrimination."  42 U.S.C. §§2000e-2(a), 2000e-3(a); *Sanders v. New York City Human Resources Admin.*, 361 F.3d 749, 755 (2d Cir. 2003).  Recognizing that most discrimination and retaliation is not carried out openly, New York courts have set out a complaining employee's burden.  *Sanders*, 361 F.3d at 755.

> An aggrieved party may use circumstantial evidence to assert a *prima facie* case of discrimination (or retaliation) by alleging "1) [she] belonged to a protected class; 2) [she] was qualified for the position; 3) [she] suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent."  *Terry v. Ashcroft*, 336 F.3d 128, 138, 141 (2d Cir. 2003).  Naturally, the employee has the burden to prove that his or her employer engaged in such conduct.  Once the plaintiff's burden has been met, "the burden shifts to the defendant, which is required to offer a legitimate, non-discriminatory rationale for its actions."  *Id.*

*Sanders*, 361 F.3d at 755.

The *Sanders* court defined an adverse employment action as a "materially adverse change" in the terms and conditions of employment.  *Id.  See Richardson v. New York State Dep't of Corr. Svcs.*, 180 F.3d 426, 446 (2d Cir. 1999).  They went on to clarify that to be "materially adverse", the change in an employee's working conditions must be "more disruptive than a mere inconvenience or an alteration of job responsibilities."  *Sanders*, 361 F.3d at 756; *Terry*, 336 F.3d at 138.  Examples of such changes include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of

benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Sanders*, 361 F.3d at 756; *Terry*, 336 F.3d at 138.

In *Sanders*, the plaintiff was a black woman who alleged discrimination based on race and gender by her white male supervisor and retaliation following her internal complaint. *Sanders*, 361 F.3d at 753.  She argued that the adverse employment action taken against her constituted a critical addendum to her performance evaluation, which was destroyed after two weeks in her file and did not prevent her promotion.  *Id*. at 756.  The court ruled that the employer's actions did not meet the threshold of being an adverse employment action.  *Id*.; *CF. Weeks v. New York State Div. of Parole*, 273 F.3d 76, 86 (2d Cir. 2001) (holding that a "notice of discipline" and a "counseling memo" by themselves were insufficient, as a matter of law, to constitute adverse employment action).

Plaintiff in the case at bar alleges adverse employment action by defendant Doherty following her complaint to management regarding defendant Berdinka's actions.  She contends that following her complaint she was subjected to groundless verbal warnings, verbal threats of termination, written warnings and a poor evaluation by a secret shopper.  She also alleges that management failed to take action upon her reports of the act of sexual harassment by defendant Berdinka.

In accordance with *Sanders* and *Weeks*, these warnings and the poor evaluation are not sufficient to establish adverse employment action by defendant Doherty.  Despite the warnings issued, plaintiff was not terminated, was not removed from her normal duties, and was not demoted in pay or title by management.  In fact, the individual who allegedly wrote up plaintiff (a Mr. Scarlata) had no dealings with plaintiff regarding the alleged incident with defendant Berdinka and was not involved with the investigation into the alleged incident.

Furthermore, Doherty has no control over, nor knowledge of, the secret shopper program which plaintiff alleged was used as an act of retaliation against her.  Fernandez Aff., ¶ 14, Exhibit L.  In fact the plaintiff's own testimony speaks of the anonymity of a secret shopper.  *Id.* at ¶ 9, Exhibit G, pages 198-199.  This program sends people in to the restaurants to evaluate service, unbeknownst to the management and staff; secrecy is a vital element of the program's success.  Therefore, Doherty and its management staff had no control over the poor evaluation given of plaintiff.

Defendant Doherty took no adverse employment action against plaintiff, therefore all claims must be dismissed.

## POINT VIII

### THE COURT MUST DISMISS PLAINTIFF'S CLAIMS FOR PUNITIVE DAMAGES AS THIS REMEDY IS NOT AVAILABLE UNDER STATE AND FEDERAL LAW

HRL §297 sets forth the procedures to be followed when an aggrieved party wishes to seek redress for discriminatory practices.  Subsection 9 of this statute sets forth the available types of remedies and specifically states that punitive damages are only available in instances of housing discrimination.  *N.Y. CLS Exec.* §297(9).  It is "undisputed" that the HRL does not provide for punitive damages.  *Farias v. Instructional Systems, Inc.*, 259 F.3d 91, 101 (2d Cir. 2001); *see Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224, 235 (2d Cir. 2000) (citing *Thoreson v. Penthouse Int'l, Ltd.* 80 N.Y.2d 490 (1992); *Molina v. J.F.K. Tailor Corp.*, 2004 U.S. Dist. LEXIS 7872, 20 (S.D.N.Y. 2004).

The United States Court of Appeals for the Second District carefully analyzed the issue of punitive damages in *Tyler v. Bethlehem Steel Corp.* and held that punitive damages are not available under New York's *Human Rights Law*.  *Tyler*, 958 F.2d 1176 (2d Cir. 1992).  In so

concluding, the court looked to the legislative intent underlying the HRL.  *Id.* at 1191.  The HRL was enacted in order to provide individuals who have been subjected to discriminatory practices with an avenue for seeking damages caused by the discrimination through court proceedings.  *Id.* On the other hand, punitive damages are intended to deter conduct not to award damages; therefore, punitive damage awards were not the intended remedy contemplated by the New York legislature.  *Id.*

Additionally, the HRL procedures were developed to encourage administrative action. *Id.*  Since punitive damages are not available in administrative proceedings, allowing such an award in a judicial proceeding would discourage filing in administrative courts, thereby undermining the intent of the procedures established by the New York legislature.  *Id.*

Finally the court looked to similar federal law for guidance in determining the applicability of punitive damages under the HRL.  *Id.*  It is well settled that under Title VII, punitive damages are not available.  *Id.*; *see Farias*, 259 F.3d at 101 ("Punitive damages under Title VII are limited…to cases in which the employer has engaged in intentional discrimination and has done so with malice or with reckless indifference to the federally protected rights of the aggrieved individual.") (internal quotes omitted) (quoting *Kolstad v. American Dental Ass'n*, 527 U.S. 529, 529-530 (1999)); *Cush-Crawford v. Adchem Corp.*, 271 F.3d 352, 356 (2d Cir. 2001). "Malice and reckless indifference refer to 'the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination.'" *Farias*, 259 F.3d at 101; *Kolstad*, 527 U.S. at 535; *see also Weissman*, 214 F.3d at 235; *Cush-Crawford*, 271 F.3d at 356 (it must be proven that defendant employer had the "requisite state of mind" of malice or reckless indifference).  A "positive element of conscious wrongdoing" is required for

23

an award of punitive damages under Title VII.  *Farias*, 259 F.3d at 101; *Kolstad*, 527 U.S. at 538.

Moreover, the amount of punitive damages that may be awarded under Title VII is capped.  *Cush-Crawford*, 271 F.3d at 356-357.  Pursuant to the statute, for an employer with more than 100 and fewer than 201 employees, the maximum amount of a damage award (future pecuniary, nonpecuniary and punitive) is $100,000.  *Id.* (interpreting 42 U.S.C. §1981a(b)(3)(B). In the case of an employer who has more than 14 employees and less than 101 employees, the maximum total award is $50,000.  42 U.S.C. §1981a(b)(3)(A).  For employers who have more than 200 and fewer than 501 employees, the cap is set at $200,000.  42 U.S.C. §1981a(b)(3)(C). Employers with more than 500 employees have a maximum total damage award of $300,000.  42 U.S.C. §1981a(b)(3)(D).

Here, the court cannot find any "conscious wrongdoing" on the part of the corporate defendants, nor against the individual defendant.  Even with plaintiff's own testimony, the actions of the corporate defendants rise only, if plaintiff's claim is taken at its face value, to negligence and Berdinka has no individual liability for these claimed acts.  The alleged retaliatory actions taken have no relation to the facts that would give rise to punitive damages. Therefore, no punitive damages are available under plaintiff's Title VII claim.

Since punitive damages are not appropriate under state or federal law, these claims must be dismissed.

## **CONCLUSION**

For the foregoing reasons, this court must grant summary judgment in favor of Defendants.

## <u>REQUEST FOR ORAL ARGUMENT</u>

Defendants respectfully request oral argument be heard on this motion.


Respectfully submitted,



    /s/   Juan c. Fernandez
Juan C. Fernandez (JF 7761)
Attorneys for Defendants Doherty Enterprises,
Inc., d/b/a Apple Food Service of New York,
LLC, a/d/b/a Applebee's Riverhead, and
Jonathan Berdinka
371 Franklin Avenue
P.O. Box 510
Nutley, New Jersey 07110
(973) 667-6000

 - and -

Steven A. Weiner
303 South Broadway
Suite 222
Tarrytown, New York 10591